2020 IL App (1st) 173019-U

FIFTH DIVISION
SEPTEMBER 18, 2020

No. 1-17-3019

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 15 CR 11162 |
| | ) | |
| CESAR CRUZ, | ) | Honorable |
| | ) | Joseph M. Claps, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE CUNNINGHAM delivered the judgment of the court.
Presiding Justice Delort and Justice Hoffman concurred in the judgment.

**ORDER**

¶ 1   *Held*: The defendant's conviction for home invasion is affirmed where he did not demonstrate that his jury waiver was invalid and where a rational factfinder could find that the evidence was sufficient to prove his guilt.

¶ 2    Following a bench trial, the defendant-appellant, Cesar Cruz, was found guilty of two counts of home invasion and two counts of aggravated battery.[1] The trial court merged the findings into one count of home invasion and sentenced the defendant to 7.5 years' imprisonment. The defendant now appeals, arguing that his jury waiver was invalid and that the evidence was insufficient to sustain his conviction. For the following reasons, we affirm the judgment of the circuit court of Cook County.

¶ 3                                    BACKGROUND

¶ 4    The defendant and co-defendant Adan Rodriguez were charged with multiple offenses arising from an incident on June 11, 2015, including attempt murder (720 ILCS 5/8-4(a) (West 2014); (720 ILCS 5/9-1(a) (West 2014)) (count I), home invasion (720 ILCS 5/19-6(a)(1), (2) (West 2014)) (counts II and III), residential burglary (720 ILCS 5/19-3(a) (West 2014)) (count IV), aggravated battery causing great bodily harm (720 ILCS 5/12-3.05(a)(1) (West 2014)) (count V), aggravated battery causing permanent disfigurement (720 ILCS 5/12-3.05(a)(1) (West 2014)) (count VI), and aggravated battery with a deadly weapon (720 ILCS 5/12-3.05(f)(1) (West 2014)) (count VII).

¶ 5    At a pretrial hearing on July 24, 2015, the trial court arraigned the defendant and informed him that he had the right to a jury trial. The trial court twice asked the defendant, "Do you know what a trial by jury is?" Each time, the defendant responded, "Yes."

¶ 6    On March 1, 2017, during another pretrial hearing, the following exchange occurred:

---

[1]Co-defendant Adan Rodriguez was found guilty of the same charges following a separate but simultaneous bench trial. He is not a party to this appeal.

"THE COURT: Your case is set for trial. Do you want a trial by a judge or a trial by a jury?

[DEFENSE COUNSEL]: He's indicating bench trial, your Honor.

THE COURT: Isn't that your signature on this document entitled jury waiver?

THE DEFENDANT: Yes, your Honor.

THE COURT: Anybody make any promises and request to get you to waive your right to a trial by a jury?

THE DEFENDANT: No, your Honor.

THE COURT: Did you make that decision after speaking with your attorney of your own free will?

THE DEFENDANT: Yes, your Honor."

¶ 7 The defendant's signed jury waiver form, dated March 1, 2017, is included in the record on appeal. It states, "I, the undersigned, do hereby waive jury trial and submit the above entitled cause to the Court for hearing."

¶ 8 That same day, March 1, 2017, a bench trial commenced. At trial, Carlos Sanchez testified that in June 2015, he lived on the second floor of his parents' home on the 2300 block of South Ridgeway Avenue in Chicago. Mr. Sanchez worked the night shift at a restaurant. Mr. Sanchez knew co-defendant Rodriguez for four years prior to June 2015. Co-defendant Rodriguez had been in Mr. Sanchez's apartment approximately 50 times, where the two men smoked marijuana together. Mr. Sanchez also knew Daniel Garcia, a younger acquaintance of co-defendant

Rodriguez, who had also been in Mr. Sanchez's apartment before.[2] Mr. Sanchez identified People's Exhibit No. 1 as a photograph of Mr. Garcia.

¶ 9 At approximately 2 or 3 p.m. on June 11, 2015, Mr. Sanchez discovered that his kitchen window was broken. He called the police and decided to not go to work that night because he was concerned that someone had broken into his house. Mr. Sanchez went to sleep around 10 p.m. At 11 p.m., he awoke to find three men in his room and became "immediately *** enraged." The lights were off and it was dark, but some light came through his window. Initially, he did not recognize any of the men. One man was four feet from the bed, another man was going through Mr. Sanchez's bedroom drawers, and the third man was standing close to Mr. Sanchez. The third man, who was "small," "lightweight," and wearing black, "bearhugged" Mr. Sanchez and tried to stab him. Mr. Sanchez "blocked" the man and "hit" him, and the man "went down." Mr. Sanchez then recognized Mr. Garcia as the man standing four feet away from his bed; although he wore a hoodie and ski mask, Mr. Garcia was a "big guy." Mr. Sanchez hit Mr. Garcia, whose hoodie fell off, and Mr. Sanchez saw Mr. Garcia's face. Mr. Sanchez also recognized the man going through the drawers as co-defendant Rodriguez, who illuminated the drawers with a cellular telephone.

¶ 10 The attackers fled through Mr. Sanchez's window as his family came upstairs. Mr. Sanchez tried to pursue the men, but his sister and mother stopped him because he was bleeding. His sister called an ambulance, and Mr. Sanchez went to the hospital, where he stayed for three days to receive treatment for four stab wounds, fractured ribs, and a lacerated spleen.

---

[2]Mr. Garcia separately pleaded guilty to home invasion for the incident on June 11, 2015. He therefore was not a co-defendant in the defendant's case and is not a party to this appeal.

¶ 11    Detectives spoke with Mr. Sanchez the morning of June 12, 2015, and showed him a photo array, identified as People's Exhibit No. 3. Mr. Sanchez identified Mr. Garcia in the photo array. Detectives showed Mr. Sanchez another photo array, on June 13, 2015, identified as People's Exhibit No. 5, in which Mr. Sanchez was unable to identify anyone. On July 6, 2015, detectives showed Mr. Sanchez another photo array, identified as People's Exhibit No. 7, in which he identified the defendant as the man who stabbed him. All the individuals in the July 6, 2015 photo array had long hair.

¶ 12    The photo arrays are included in the record on appeal. Photographs of the defendant were featured in both the June 13, 2015 and July 6, 2015 arrays in the top row, third column position, though the defendant's hair is longer in the photograph used in the July 6, 2015 array. When asked how he identified the defendant in the July 6, 2015 array, Mr. Sanchez said he recognized the defendant based on their "physical interaction." Mr. Sanchez described the man who stabbed him as "lightweight," "small," dressed in "all black" and having a "slim" face. His hood was up during the attack, covering his hair. Mr. Sanchez identified the defendant in court as the man who stabbed him.

¶ 13    Mr. Sanchez was familiar with co-defendant Rodriguez's cellular telephone, a "red HTC" telephone, and identified People's Exhibit No. 8 as the telephone. After the attackers fled, Mr. Sanchez saw the red HTC telephone on the floor in his bedroom. Following the incident, Mr. Sanchez discovered that he was missing a watch case and two iPhone boxes.

¶ 14    The State introduced People's Exhibits No. 9 through 23, which Mr. Sanchez identified as photographs of his home and items recovered from his bedroom following the incident. People's Exhibit No. 15 showed a "bookbag, a TV, and [co-defendant Rodriguez's] [tele]phone." The

bookbag did not belong to Mr. Sanchez. People's Exhibit No. 20 depicted the broken blade of a knife, a screwdriver, and shorts, none of which belonged to Mr. Sanchez. The State also entered into evidence, a CD-ROM containing photographs, one of which Mr. Sanchez identified as depicting co-defendant Rodriguez holding the red HTC telephone.

¶ 15    On cross-examination, Mr. Sanchez testified that he told the responding officers he was unsure who stabbed him, but at trial, he was "clear" that it was the defendant. At the hospital on June 11, 2015, Mr. Sanchez identified co-defendant Rodriguez and Mr. Garcia to the detectives, but could not identify or describe the third attacker. Mr. Sanchez gave a written statement to police two days after the incident, but it "was not fully correct." That statement indicated that co-defendant Rodriguez "bearhugged" Mr. Sanchez while the third individual went through the drawers.

¶ 16    Mr. Sanchez did not know the defendant prior to the incident. Most of Mr. Sanchez's injuries were to his back, and he did not know what instrument caused those injuries. Though he initially said co-defendant Rodriguez stabbed him, he was now "correct[ing]" himself, because after "so many nights of sleeping," he knew it was not co-defendant Rodriguez. Mr. Sanchez could not sleep for three months following the incident, and had nightmares about the stabbing every night during that period.

¶ 17    On redirect, Mr. Sanchez reiterated that it was the defendant, not co-defendant Rodriguez, who bearhugged him. Co-defendant Rodriguez escaped out of Mr. Sanchez's window first, followed by the defendant, and lastly by Mr. Garcia. Mr. Sanchez told emergency medical personnel that he was stabbed with scissors, but at trial he was unsure what instrument his attacker used to stab him.

¶ 18    The court asked Mr. Sanchez whether he saw any of the attackers' uncovered faces. He responded that he saw Mr. Garcia's uncovered face.

¶ 19    Mr. Garcia testified that he pleaded guilty to a June 11, 2015 home invasion at Mr. Sanchez's house and was on juvenile probation at the time of trial.[3] However, he did not recognize a photograph of Mr. Sanchez and stated that he had never been to the home on the 2300 block of South Ridgeway Avenue. Mr. Garcia knew co-defendant Rodriguez for most of his life and knew the defendant for a year prior to June 11, 2015. He identified them both in court.

¶ 20    Mr. Garcia could not remember if he entered the home on the 2300 block of South Ridgeway Avenue on June 11, 2015, because he was "under the influence of a lot of drugs." Mr. Garcia repeatedly stated that he could not remember any details of that day, including whether he entered and escaped Mr. Sanchez's house through a window. He did not recognize the black backpack depicted in People's Exhibit No. 27, did not see the defendant carrying it, and did not know whether it contained two pairs of scissors or a screwdriver. He did not remember having a red HTC telephone on June 11, 2015, and did not recognize the red HTC telephone marked as People's Exhibit No. 8.

¶ 21    Mr. Garcia did not remember speaking to detectives at the police station while his parents were present or giving a statement. He did not recall telling the detectives that he broke the window to Mr. Sanchez's home on June 11, 2015, because he needed money and marijuana. He also did not recall telling the detectives that he, co-defendant Rodriguez, and the defendant broke into Mr. Sanchez's house later that night because they thought he would be at work. Mr. Garcia did not recall stating that the defendant brought a black plastic bag with a screwdriver or that the three

---

[3]Mr. Garcia testified that he was 17 years old on June 11, 2015, and 19 years old at the time of trial.

men entered through the second-floor window. Mr. Garcia also could not recall stating that the defendant told him to restrain Mr. Sanchez with an extension cord, or that Mr. Sanchez and the defendant fought, during which the defendant stabbed Mr. Sanchez with a screwdriver. Finally, Mr. Garcia did not recall telling detectives that he fled out of the window when he saw Mr. Sanchez's father enter the room, or that he told co-defendant Rodriguez that he left the red HTC telephone in Mr. Sanchez's room.

¶ 22 Mr. Garcia remembered pleading guilty to home invasion during a court proceeding on July 26, 2016, but did not recall that the prosecutor read the factual basis for the plea into the record, or that he affirmed that the factual basis was a fair and accurate recitation of the incident. On cross-examination, Mr. Garcia stated that he was in custody from the time of his arrest on June 13, 2015, until September 7, 2016, and only pleaded guilty because he "wanted to go home."

¶ 23 Detective Joseph Fronczak testified that on June 13, 2015, he took Mr. Garcia's statement. Mr. Garcia's mother, father, and a Spanish-speaking officer were present. Mr. Garcia was Mirandized and did not appear to be under the influence of drugs or alcohol. Detective Fronczak identified People's Group Exhibit 28A as an accurate video recording of Mr. Garcia's statement on June 13, 2015, which the State published. The video is included in the record on appeal

¶ 24 In the video, Mr. Garcia stated that he and the defendant, whom Mr. Garcia only identified by a first name, entered Mr. Sanchez's house while co-defendant Rodriguez stayed outside. The defendant went to the kitchen while Mr. Garcia went to Mr. Sanchez's bedroom and saw him asleep. The defendant told Mr. Garcia to tie up Mr. Sanchez, but Mr. Garcia refused. Mr. Garcia started going through shoe boxes in Mr. Sanchez's room because that is where Mr. Sanchez kept his marijuana, and the defendant put shoes in a black plastic bag and threw them out the window.

Later, the defendant stood over Mr. Sanchez's bed, holding a screwdriver. Mr. Sanchez woke up and started an altercation with the defendant, during which the defendant stabbed Mr. Sanchez. Mr. Garcia fled through the window.

¶ 25    Detective Fronczak further testified that Mr. Sanchez was shown a photo array on July 6, 2015, at his home. The photo array differed from the photo array he had viewed on June 13, 2015; though each array contained a photograph of the defendant, the photograph of the defendant in the July 6, 2015 photo array was "congruent with the hairstyle" the defendant wore the night of the incident.

¶ 26    The State entered a stipulation that the CD-ROM marked as People's Exhibit No. 24 was a fair and accurate recording of data recovered from the red HTC telephone and that People's Exhibit No. 29 was a fair and accurate transcript of Mr. Garcia's case. The State then moved People's Exhibits Nos. 1 through 29 into evidence.

¶ 27    In the transcript from Mr. Garcia's case, which is included in the record on appeal, the prosecutor described the factual basis for Mr. Garcia's guilty plea, including that Mr. Sanchez would testify that on June 11, 2015, he awoke to find three men in his bedroom. Two of the men "began to hit" him. Mr. Sanchez defended himself and removed the mask from one attacker, whom he recognized as co-defendant Rodriguez. The "individuals then began to stab" Mr. Sanchez "about his body." Mr. Sanchez later identified Mr. Garcia as "one of the other individuals." Detective Fronczak would testify that he interviewed Mr. Garcia, who told Detective Fronczak that he and the defendant (identified by first and last name by the prosecutor) entered Mr. Sanchez's home. Mr. Garcia took co-defendant Rodriguez's cellular telephone, a red HTC telephone, inside the home. Mr. Garcia went to the bedroom and placed items in a bag, then noticed

Mr. Sanchez was asleep. The defendant told Mr. Garcia to tie up Mr. Sanchez with an extension cord, but Mr. Garcia refused. Mr. Sanchez awoke and started fighting the defendant, who stabbed Mr. Sanchez with a screwdriver. At the conclusion of the prosecutor's recitation, Mr. Garcia agreed that the facts were "a fair and accurate recitation" of the incident.

¶ 28    Defense counsel moved for a directed verdict, arguing that Mr. Sanchez's identification of the defendant was insufficient to establish his guilt beyond a reasonable doubt. Counsel emphasized that Mr. Sanchez's testimony in court differed from his statement to police and he did not see the defendant's face. The State responded that Mr. Sanchez identified the defendant in the July 6, 2015 photo array and that Mr. Garcia's videotaped statement implicated the defendant. The court denied the motion, and the defense rested.

¶ 29    During closing arguments, defense counsel again argued that Mr. Sanchez's identification of the defendant was suspect. He argued that Mr. Garcia only identified someone with the defendant's first name in his videotaped statement, and therefore did not implicate the defendant directly. He highlighted that Mr. Sanchez said his handwritten statement, made two days after the incident, was not accurate. Counsel questioned "[w]hat happened" between the June 13 and July 6, 2015 photo arrays that affected Mr. Sanchez's ability to identify the defendant, and again contended that during his testimony, Mr. Sanchez said he never saw the defendant's face. Counsel also questioned whether Mr. Sanchez's testimony about the defendant stabbing him could be relied upon because Mr. Sanchez based it on his "nightmare[s]."

¶ 30    The State argued, in rebuttal, that Mr. Sanchez identified the defendant in court as the man who bearhugged and stabbed him, and also identified the defendant in the July 6, 2015 photo array. The State also emphasized that Mr. Garcia's videotaped statement implicated the defendant.

¶ 31 The trial court found the defendant not guilty of attempt murder (count I) and aggravated battery causing permanent disfigurement (count VI), but found him guilty of both counts of home invasion, aggravated battery causing great bodily harm, and aggravated battery with a deadly weapon (counts II, III, V, and VII).[4]

¶ 32 The defendant moved for reconsideration. At the initial hearing on the motion, the trial court stated that it saw the video of Mr. Garcia's statement, and believed his in-court testimony was "nothing short of perjury." The matter was continued, and at a subsequent hearing, the trial court denied the defendant's motion.

¶ 33 The case proceeded to a sentencing hearing, where the defendant's presentencing investigation report showed that he was 22 years old at the time of trial, had no criminal history, and had been expelled from high school as a freshman for absenteeism. The court merged the findings of guilt into count II for home invasion (720 ILCS 5/19-6(a)(1) (West 2014)), sentenced defendant to 7.5 years' imprisonment, and denied his motion to reconsider sentence.

¶ 34                                    ANALYSIS

¶ 35 We note that we have jurisdiction to review the trial court's judgment, as the defendant filed a timely notice of appeal. Ill. S. Ct. R. 603 (eff. Feb. 6, 2013); R. 606 (eff. July 1, 2017).

¶ 36 The defendant presents the following issues: (1) whether his jury waiver was invalid; and (2) whether the State failed to prove him guilty of home invasion beyond a reasonable doubt.

---

[4]In delivering its findings, the trial court stated that "residential burglary is a lesser included" offense that "merges into count 2," and "[y]ou can't have a separate finding of that." The court made no further reference to the residential burglary count at trial or at sentencing, and the defendant's mittimus only states that "COUNTS 3, 5, 7 MERGE WITH COUNT 2."

¶ 37    The defendant first argues that his jury waiver was invalid. Specifically, he claims the trial court did not ensure that he made a knowing and understanding jury waiver in light of his youth and inexperience with the criminal justice system. The defendant acknowledges that he did not properly preserve this issue through a timely objection and inclusion in a posttrial motion, but argues that we can review it on plain error review.

¶ 38    Plain error review is appropriate where a clear or obvious error occurred at trial and (1) the evidence was so "closely balanced" that the error, by itself, may have tipped "the scales of justice against the defendant," irrespective of the error's seriousness, or (2) the error was so inherently serious that "it affected the fairness of the defendant's trial and challenged the integrity of the judicial process," regardless of whether the evidence was closely balanced. *People v. Belknap*, 2014 IL 117094, ¶ 48. "Whether a defendant's fundamental right to a jury trial has been violated is a matter that may be considered under the plain error rule." *People v. Bracey*, 213 Ill. 2d 265, 270 (2004). First, we must determine whether a clear or obvious error occurred. *People v. Reese*, 2017 IL 120011, ¶ 60.

¶ 39    A defendant's right to a jury trial is guaranteed by the United States Constitution, and a defendant's decision to waive this right and proceed by bench trial must be done knowingly and understandingly. U.S. Const., amends. VI, XIV; *Bracey*, 213 Ill. 2d at 269. The trial court must ensure that the defendant's waiver is proper, but there is no established set of admonishments. *People v. Bannister*, 232 Ill. 2d 52, 66 (2008). Generally, the trial court should ensure that the defendant "(1) understands he is entitled to a jury trial, (2) understands what a jury trial is, and (3) wishes to be tried by a jury or by the court without a jury." *People v. West*, 2017 IL App (1st) 143632, ¶ 15 (citing *People v. Chitwood*, 67 Ill. 2d 443, 448-49 (1977)). On appeal, the defendant

has the burden to prove his jury waiver was invalid. *People v. Reed*, 2016 IL App (1st) 140498, ¶ 7. A signed jury waiver form is evidence that a defendant intentionally waived his right, but is not conclusive of the issue. *Id.* Because the facts underlying this claim are not in dispute, our review is *de novo*. *Bannister*, 232 Ill. 2d at 66.

¶ 40    The record shows that, at a pretrial hearing on July 24, 2015, the trial court informed the defendant of his right to a jury trial, and the defendant *twice* affirmed that he understood what a jury trial was. Immediately before trial on March 1, 2017, the trial court asked the defendant whether he wanted "a trial by a judge or a trial by a jury?" After defense counsel stated that the defendant wanted a bench trial, the trial court asked the defendant whether he signed the jury waiver form, to which the defendant answered affirmatively. On further questioning by the trial court, the defendant agreed that no one promised him anything in order to waive his right to a jury trial and that he made the decision voluntarily after consulting with his attorney. The signed jury waiver form states that the defendant chose to "waive jury trial and submit the above entitled cause to the Court for hearing."

¶ 41    We find that the defendant has not demonstrated that his jury waiver was invalid. The record shows that the trial court ensured that the defendant knew that he had a right to a jury trial and that he also knew what a jury trial was, and the defendant voluntarily chose a bench trial. While the court did not discuss the difference between a bench and a jury trial, the defendant executed a valid jury waiver form, which is competent evidence of his intent to waive his right to a jury trial. *Reed*, 2016 IL App (1st) 140498, ¶ 7. That form explained that, by signing the waiver, the defendant would submit his case to a hearing by the court without a jury. Additionally, the court ensured that the defendant made his decision in consultation with his attorney. The

defendant's argument that he was young and inexperienced with the criminal justice system at the time of trial does not establish, in and of itself, that his waiver was unknowing or involuntary. The burden is on the defendant to establish the claim, and the facts and circumstances of this case show that the trial court appropriately admonished the defendant and that the defendant made a valid waiver. See *id.*

¶ 42 The defendant directs our attention to *People v. Johnson*, 2019 IL App (1st) 162517, where a jury waiver form appeared in the record but the trial court did not explain to the defendant that he had the right to a jury trial or what that right entailed, and instead only asked defense counsel whether the case would proceed by a bench or jury trial. *Johnson*, 2019 IL App (1st) 162517, ¶¶ 4-5, 15-19. Here, in contrast, the trial court expressly affirmed that the defendant: (1) knew what a jury trial was; (2) knew he was entitled to a jury trial; and (3) voluntarily wanted to waive his right to a jury trial. See *West*, 2017 IL App (1st) 143632, ¶ 15.

¶ 43 The defendant argues that the trial court's question, "Did you make that decision after speaking with your attorney of your own free will?" could be interpreted as asking whether the defendant spoke to his attorney voluntarily, not whether he waived his right to a jury trial voluntarily. In context, however, the court made this statement while specifically discussing the defendant's jury waiver. Moreover, the record contains no indication that this question, or any other question respecting the defendant's right to a jury trial, confused the defendant. We decline to seek an interpretation of the trial court's question which is clearly at odds with the context and content of the discussion. He has, thus, failed to meet his burden of demonstrating that his jury waiver was invalid. Without an error, there can be no plain error, and the defendant's argument therefore fails.

¶ 44    The defendant next argues that the State failed to prove him guilty of home invasion beyond a reasonable doubt. He claims that the evidence at trial was insufficient to sustain his conviction because Mr. Sanchez's identification testimony and Mr. Garcia's videotaped statement were unreliable.

¶ 45    When reviewing the sufficiency of the evidence, the reviewing court must determine whether any rational factfinder, viewing the evidence in the light most favorable to the State, could have found the defendant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *People v. Drake*, 2019 IL 123734, ¶ 21. The reviewing court must not substitute its judgment for that of the factfinder on matters of witness credibility or the weight of the evidence. *People v. Hardman*, 2017 IL 121453, ¶ 37. Reversal is improper unless the "evidence is so unreasonable, improbable, or unsatisfactory" that it creates reasonable doubt of the defendant's guilt. *People v. Newton*, 2018 IL 122958, ¶ 24.

¶ 46    We first consider Mr. Sanchez's identification, using the familiar framework established in *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972). Pursuant to *Biggers*, an eyewitness identification is weighed based on the totality of the circumstances, with particular consideration given to (1) the witness' opportunity to view the offender at the time of the incident, (2) the witness' degree of attention during the incident, (3) the accuracy of previous descriptions of the offender by the witness, (4) the witness' degree of certainty in his identification, and (5) the time lapse between offense and identification. *People v. Macklin*, 2019 IL App (1st) 161165, ¶ 22 (citing *In re M.W.*, 232 Ill. 2d 408, 435 (2009)). "The opportunity to view the offender is the most important factor." *People v. Davis*, 2018 IL App (1st) 152413, ¶ 56. The identification testimony of a single witness, if positive and credible, can sustain a conviction. *People v. Gray*, 2017 IL 120958, ¶ 36.

¶ 47    When considering the opportunity to observe, courts weigh " 'whether the witness was close enough to the accused for a sufficient period of time under conditions adequate for observation.' " *People v. Corral*, 2019 IL App (1st) 171501, ¶ 77 (quoting *People v. Carlton*, 78 Ill. App. 3d 1098, 1105 (1979)). Here, Mr. Sanchez was in close proximity to his attackers during the physical altercation and the room was illuminated by light from the window. Although, on questioning by the trial court, Mr. Sanchez stated that he only saw Mr. Garcia's uncovered face, Mr. Sanchez described the defendant's physical characteristics at trial -- small, lightweight, and having a slim face. A witness' ability to describe physical characteristics apart from facial features can suggest "adequate opportunity to view" and contributes to the reliability of an identification. See *People v. Camel*, 59 Ill. 2d 422, 432 (1974) (a witness' identification based on physical characteristics besides the defendant's face, including height and build, could be deemed reliable). Ultimately, because it is the factfinder's responsibility to weigh conflicting evidence and the evidence allows the inference that Mr. Sanchez saw the defendant's face and other physical characteristics, we find that a rational factfinder could have weighed Mr. Sanchez's opportunity to view the defendant, in favor of reliability.

¶ 48    Mr. Sanchez's testimony describing his degree of attention shows that, though he was "enraged" to find the men in his room, his attackers had his undivided attention. He relayed specifics about the incident and his attackers, including the details of his physical altercation with the defendant and Mr. Garcia, the means of escape used by the attackers, and that one man used the red HTC telephone to search through drawers. The defendant argues that Mr. Sanchez focused solely on the other attackers. According to Mr. Sanchez's testimony, however, *all three* attackers were in the same confined space during the incident, and as already noted, Mr. Sanchez described

the defendant's physical characteristics. A rational factfinder could find that Mr. Sanchez had a high degree of attention to both the situation generally and the defendant specifically, despite the initial shock of the situation. See *People v. Robinson*, 206 Ill. App. 3d 1046, 1052 (1990) ("Excitement, rather than detract from an identification, could increase the powers to observe.").

¶ 49    The third *Biggers* factor is not probative because Mr. Sanchez did not give a prior description of the defendant before he was arrested.

¶ 50    Regarding the degree of certainty, the record shows that Mr. Sanchez was initially unable to identify the defendant in the June 13, 2015 photo array, but he later identified the defendant in the July 6, 2015 photo array and again in court. The defendant argues that successive photo arrays containing one common person, whose photograph was located in the same position in each array, should be considered suspect. In *People v. Hernandez*, 312 Ill. App. 3d 1032, 1034 (2000), the witness did not initially identify the defendant in a photo array before identifying him in a subsequent array. We held that the "photo array procedure inexorably led" to the witness later identifying the defendant in a lineup. *Id.* at 1037. This case differs from *Hernandez*, however, because in that case, the witness was in a school bus 90 feet away from the defendant, and could only see the defendant's "profile." *Id.* at 1036. In this case, by contrast, Mr. Sanchez was in close proximity to his attacker, and was confident at trial that the defendant stabbed him based on the defendant's "slim" face and slight stature. This testimony suggests that Mr. Sanchez's photo array and in-court identifications were based on his own observations and not the product of improper suggestion. Accordingly, we find that a rational factfinder could weigh this factor in favor of reliability.

¶ 51    Finally, the length of time between the incident and identification favors reliability. Mr. Sanchez identified the defendant in the July 6, 2015 photo array, which occurred approximately 25 days after the incident. Similar, and even longer, periods of time have been found to not constitute a significant time lapse such that it impacts an identification's reliability. See *People v. Slim*, 127 Ill. 2d 302, 313-14 (1989) (gathering cases where identifications made a month or longer after an incident were not suspect).[5]

¶ 52    Although conflicting inferences could arguably be drawn from the record, there was sufficient evidence from which a rational factfinder could have credited Mr. Sanchez's identification of the defendant.

¶ 53    The defendant also argues that Mr. Garcia's videotaped statement should be rejected as unreliable accomplice testimony.

¶ 54    Respecting the weight and credibility of accomplice testimony, the supreme court has found that while "the testimony of an accomplice witness has inherent weaknesses and should be accepted only with caution and suspicion," the testimony is "sufficient to sustain a criminal conviction if it convinces [the factfinder] of the defendant's guilt beyond a reasonable doubt." *People v. Tenney*, 205 Ill. 2d 411, 429 (2002). Accomplice testimony may be strengthened when corroborated by other evidence in the record. *People v. Holmes*, 141 Ill. 2d 204, 242 (1990).

¶ 55    The trial court found that Mr. Garcia's videotaped statement was a credible account of the incident, and described Mr. Garcia's trial testimony as "nothing short of perjury" at the hearing on the defendant's motion for reconsideration. The defendant argues that Mr. Garcia's videotaped

---

[5]To the extent that the defendant's brief cites scholarly materials regarding memory and eyewitness testimony, we note that we cannot consider these materials because they were not part of the record at trial. See *People v. Heaton*, 266 Ill. App. 3d 469, 476 (1994).

statement is incredible because Mr. Garcia gave it under coercive circumstances, but the trial court saw Mr. Garcia in court and in the videotaped statement, and found the statement credible with full knowledge of its circumstances. Additionally, though Mr. Garcia only referred to the defendant by his first name in the videotaped statement, the trial court was better positioned to weigh this evidence alongside the other evidence and testimony at trial, and apparently had no trouble determining that Mr. Garcia was referring to the defendant. These are considerations regarding the weight and credibility of evidence, and we cannot substitute our judgment for that of the factfinder on such matters. See *Hardman*, 2017 IL 121453, ¶ 37.

¶ 56    There is also evidence corroborating Mr. Garcia's videotaped statement. In his statement, Mr. Garcia discussed going through shoe boxes and that the defendant took some items from them. At trial, Mr. Sanchez testified that some boxes and items were missing from his room. Additionally, Mr. Garcia said that the defendant stood over Mr. Sanchez's bed while holding a screwdriver, and then had a physical confrontation with Mr. Sanchez. This mirrors Mr. Sanchez's testimony about the physical altercation between him and the defendant. This corroboration supports the trial court's decision to credit Mr. Garcia's videotaped statement despite his status as an accomplice.

¶ 57    In sum, a rational factfinder could have found that the evidence at trial was sufficient to find that the third attacker was the defendant, and therefore find the defendant guilty of home invasion beyond a reasonable doubt. Accordingly, we affirm the defendant's conviction.

¶ 58                              CONCLUSION

¶ 59    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 60    Affirmed.